FILED

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

2016 FEB 10 PM 3: 33

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____

| | |
|---|---|
| MICHELLE FISHER, Individually and on behalf of her minor son BF, and DOLORES VOUDOURIS<br><br>VS.<br><br>TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, AMANDA NEILSON, KELLI JOHNSON, SHARLA LAWLESS and DORA MONTOYA, Individually and in their official capacities, MIKE ANDREWS, JON CRAIGMILE, JAROD ROSSON, BEN HAVERDA and JOHN DOES 1-5, Individually and in their official capacities | CASE NUMBER:<br><br>**A16CV0124 RP** |

## COMPLAINT

Plaintiffs, Michelle Fisher, Individually and on behalf of her minor son, BF, and Dolores Voudouris, moves the Court for entry of judgment in their favor against the Defendants, Texas Department of Family and Protective Services, Amanda Neilson, Kelli Johnson, Sharla Lawless, Dora Montoya, Mike Andrews, Jon Craigmile, Jarod Rosson, Ben Haverda and John Does 1-5 and in support of such Complaint avers as follows:

## PARTIES

1.      Plaintiff, Michelle Fisher, currently resides in Comal County, Texas.

2.      Plaintiff, BF, Michelle Fisher's son, currently resides in Comal County, Texas.

3.    Plaintiff, Delores Voudouris, Michelle Fisher's mother and BF's grandmother, currently resides in Comal County, Texas.

4.    Defendant, Texas Department of Family and Protective Services (TDFPS), is a governmental agency within the state of Texas.

5.    Defendant, Amanda Neilson, was at all relevant times, including prior to February 10, 2014 and thereafter, an employee of TDFPS.  She is being in her individual and official capacity.

6.    Defendant, Kelli Johnson, was at all relevant times, including prior to February 10, 2014 and thereafter, an employee of TDFPS.  She is being sued in her individual and official capacity.

9.    Defendant, Sharla Lawless, was at all relevant times, including prior to February 10, 2014 and thereafter, an employee of TDFPS.  She is being sued in her individual and official capacity.

10.    Defendant, Dora Montoya, was at all relevant times, including prior to February 10, 2014 and thereafter, an employee of TDFPS.  She is being sued in her individual and official capacity.

11.    Defendant, Mike Andrews, was at all relevant times, including prior to February 10, 2014 and thereafter, an employee of the Hays County Sheriff's Department.  He is being sued in his individual and official capacity.

12.    Defendant, Jon Craigmile, was at all relevant times, including prior to February 10, 2014 and thereafter, an employee of the Hays County Sheriff's Department.  He is being sued in his individual and official capacity.

13.    Defendant, Jarod Rosson, was at all relevant times, including prior to February 10, 2014 and thereafter, an employee of the Hays County Sheriff's Department. He is being sued in both his individual and official capacity.

14.    Defendant, Ben Haverda, was at all relevant times, including prior to February 10, 2014 and thereafter, an employee of the Hays County Sheriff's Department. He is being sued in his individual and official capacity.

15.    Defendants John Does 1-5 are employees of the Hays County Sheriff's Department whom the Plaintiffs do not currently know their identities and therefore sues them by such fictitious names in their individual and official capacity. Plaintiff will seek leave to amend this complaint to allege the true identity of these defendants when they are ascertained.

16.    At all times relevant, the above named individual Defendants acted under color of state law.

## NATURE OF ACTION AND JURISDICTION

17.  This is a civil action under 42 U.S.C. §1983 seeking damages against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiffs of rights secured under state statutes and the United States Constitution.

18.  This case arises under the United States Constitution and 42 U.S.C. § 1983, as amended. This Court has jurisdiction of this matter pursuant to 28 U.S.C. Sections 1331 and 1343.

19.    Plaintiff, Michelle Fisher brings this action seeking redress for damages caused by the Defendants' violations of state agency policies and

regulations, state statutes and her constitutional rights secured by the 4th, and 14th amendments to the United States Constitution. Plaintiff, Michelle Fisher brings this action on behalf of her son, B.F. seeking redress for damages caused by Defendants' violations of state agency policies and regulations, state statutes and his constitutional rights secured by the 4th and 14th amendments to the United States Constitution. Plaintiff, Dolores Voudouris, brings this action seeking redress for damages caused by the Defendants' violations of her constitutional rights secured by the 4th and 14th amendment to the United States Constitution.

20.  This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. §1391(b)(1) and (b)(2).  The actions complained of took place in this judicial district and the Defendants regularly conduct affairs in this judicial district.

## STATEMENT OF FACTS

21.  In early to mid December 2013 Michelle Fisher temporarily stayed at the residence of David and Donna Hall in San Marcos, Texas for the purpose of assisting them in the care of their four minor children.

22.  Michelle Fisher stayed at the Hall residence for approximately one and one-half weeks.  During the first week Michelle Fisher stayed with the Hall's while her son B.F. stayed with his grandmother, Dolores Voudouris.  During the second week of her stay, Ms. Fisher's son B.F. stayed with her at the Hall residence.

23.  On or about December 23, 2013 in the early morning while Michelle Fisher was still in bed, Donna Hall inexplicably assaulted Michelle Fisher.

24.    Immediately after Donna Hall assaulted her, Michelle Fisher took her son B.F. and ran from the Hall home.  Ms. Fisher went to a neighbor's house and asked that they call her mother, Dolores Voudouris, who came and picked up Michelle and her son B.F.

25.    Michelle Fisher never returned to the Hall residence after the assault and she has not spoken with David and/or Donna Hall since the assault.

26.    Sometime after Michelle Fisher left the Hall residence, Amanda Neilson, employed by TDFPS, initiated an investigation concerning David and Donna Hall and their four children.  During the course of the investigation, drugs were seized from the Hall home.

27.    While Michelle Fisher was staying at the Hall residence, she did not see any drugs in or about the Hall residence, she did not observe any drug use by David and/or Donna Hall and she did not hear about any drug use by David and/or Donna Hall.

28.    In January and/or February 2014, prior to February 10, 2014, on two occasions unknown law enforcement officers with the Hays County Sheriff's Department, identified herein as John Does 1-5, acting individually and in their official capacities, unlawfully entered and searched Dolores Voudouris' private property without a court order, consent, probable cause or exigent circumstances.

29.    It is the Plaintiffs' belief that the unlawful searches of Ms. Voudouris' private property by John Does 1-5 was related to the Hays County Sheriff Departments criminal investigation and the TDFPS investigation concerning the

Halls and the forthcoming revelation of unsubstantiated suspected drug use by Michelle Fisher.

30.    On or about February 5, 2014, six weeks after Michelle Fisher left the Hall residence and ceased all communications with the Halls, Dolores Voudouris received a telephone call from Amanda Neilson with TDFPS informing Ms. Voudouris that she wanted to speak with Michelle Fisher regarding her stay at the Hall residence.

31.    On or about February 5, 2014, Dolores Voudouris informed Michelle Fisher that Amanda Neilson with TDFPS had called and wanted to discuss Michelle's stay at the Hall residence.  Assuming that Amanda Neilson wanted her be a witness for TDFPS against the Halls, Michelle Fisher informed Dolores Voudouris that she did not want to be involved.

32.    On or about February 6, 2014, Dolores Voudouris received another call from Amanda Neilson with TDFPS asking about Michelle Fisher's whereabouts.  Aware that Michelle did not want to be involved in TDFPS' investigation of the Halls, Dolores Voudouris did not reveal Michelle Fisher's whereabouts to Amanda Neilson.

33.    On or about February 6, 2014, Ms. Fisher received a phone message from Amanda Neilson with TDFPS advising that she wanted to speak with Michelle regarding her stay at the Hall residence.  Again, assuming that Amanda Neilson wanted Michelle to be a witness for TDFPS against the Halls, she did not return Amanda Neilson's phone call.

34.    Amanda Neilson never inquired about B.F. or expressed any concerns regarding Michelle or B.F.'s care and she never stated or even implied that she was actually investigating Michelle Fisher on behalf of TDFPS in her two phone calls to Dolores Voudouris and in her one phone message to Michelle Fisher.

35.    On February 7 2014, six full weeks after Michelle Fisher had left the Hall residence and ceased all communications with the Halls and without any inquiry whatsoever regarding B.F.'s current living situation or care upon speaking with his grandmother, Dolores Voudouris, Amanda Neilson "staffed the case" with her supervisor Kelli Johnson.

36.    Without any investigation or inquiry whatsoever concerning Michelle's living situation, well being and/or care of B.F. during the prior six weeks and without any investigation or inquiry regarding Michelle's current living situation, well being and care of B.F., on February 7 2014, Kelli Johnson advised Amanda Neilson to "call in an intake" and create a separate case for Michelle Fisher and her son, B.F., for "concerns of drug use due to home environment she was living in *previously* and BF's exposure to domestic violence". (emphasis added).

37.    On Monday, February 10, 2014 at 11:20 a.m., without first contacting Michelle Fisher and informing her of the true basis for her call and discussing her concerns, Amanda Neilson initiated her actual investigation of Michelle Fisher by showing up unexpectedly at her residence with detective Mike Andrews, deputy Jon Craigmile, deputy Jarod Rosson, and deputy Ben Haverda

all uniformed law enforcement officers with the Hays County Sheriff's department, hereinafter referred to generally, where appropriate, as Hays County law enforcement officers.

38.    Again, on February 10, 2014, the Hays County law enforcement officers, along with Amanda Neilson, individually and in their official capacities, unlawfully entered and searched Dolores Voudouris' private property, traversing gates to reach Michelle's trailer, without a court order, consent, probable cause or exigent circumstances.

39.    The Hays county law enforcement officers knocked on Michelle Fisher's trailer and ordered the occupants outside.  Michelle was in the trailer with her son B.F. and his father, James Daniel Francis.

40.    Michelle Fisher was frightened, upset and reluctant to go outside, as she did not understand why law enforcement officers surrounded her trailer. Neither Amanda Neilson nor the officers stated the basis for their presence; rather they simply ordered her to come outside.

41.    After several minutes of repeatedly being ordered by law enforcement to exit her trailer, Michelle Fisher, reluctant and frightened, stepped out her door with her son, B.F., in her arms.

42.    Upon exiting her trailer, Amanda Neilson introduced herself to Michelle Fisher and explained that she needed to speak with her.  Michelle acknowledged that she received Ms. Neilson's message and told Ms. Neilson that she did not want to be involved in the TDPFS investigation of the Halls. Then Ms. Neilson informed Michelle that she had concerns that David Hall had

abused B.F. and needed to check on his physical well-being. Michelle was very surprised by this allegation and adamantly denied any abuse. Holding B.F. in her arms, Michelle pointed out to Amanda Neilson that she could see he was fine, content and doing well.

43. Amanda Neilson insisted that they discuss the matter. Michelle asked if she could set up an appointment to do the interview another day. Ms. Neilson denied Michelle's request and insisted that they speak with each other at that time. Michelle Fisher then requested that the interview take place at her mother's house located nearby.

44. Refusing Michelle Fisher's request to conduct the interview at her mother's house, Amanda Neilson remained at Michelle's trailer and then she unexpectedly insisted that she needed to "observe B.F.'s sleeping and living conditions".

45. Michelle Fisher did not want to allow Amanda Neilson and the law enforcement officers into her home. She began to walk toward her mother's house with her son in an attempt to get Amanda Neilson and the law enforcement officers to follow her.

46. Amanda Neilson and the law enforcement officers refused to leave Michelle Fisher's home and again insisted that they be permitted to "observe B.F.'s sleeping and living conditions".

47. During this time, one of the yet to be identified Hays County law enforcement officer's interrupted Michelle's conversation with Ms. Neilson and begin to interrogate Michelle Fisher, asking who else was in her trailer. Trying to

comprehend the demands of Amanda Neilson, Michelle Fisher was upset and confused as she felt she had a right to reschedule the interview. Uncertain why the officer was now demanding to know who was in the trailer, Michelle Fisher initially, dismissively said nobody. Eventually, she informed the Hays County law enforcement officers that James Daniel Francis was in the trailer.

48.    Amanda Neilson and the Hays County law enforcement officers continued to insist on entering Michelle Fisher's home to observe B.F.'s sleeping and living conditions.

49.    Believing she had no choice, Michelle Fisher acquiesced to Amanda Neilson and Hays County law enforcement officers' demands to enter her home, at which time Amanda Neilson and one of the Hays County law enforcement officers entered her trailer, while the other officers remained outside.

50.    Upon entering Michelle Fisher's home, James Daniel Francis identified himself to the Hays County law enforcement officer.

51.    While the Hays County law enforcement officers and Amanda Neilson were examining Michelle Fisher's home, James Daniel Francis exited out the rear door of the trailer (both doors face the front of the trailer where the officers were standing).

52.    James Daniel Francis walked to the property next door and witnessed the subsequent events concerning Michelle Fisher, B.F., Dolores Voudouris, Amanda Neilson and the Hays County law enforcement officers.

53.    No one, including Hays County law enforcement, looked for James Daniel Francis after he left the trailer.

54. After the Hays County law enforcement officer and Amanda Neilson examined her home, Michelle Fisher requested that they go outside.

55. After Hays County law enforcement officers and Amanda Neilson exited her trailer, Michelle Fisher asked Amanda Neilson and the Hays County law enforcement officers to leave and walked to her mother's home, with B.F. When her mother did not come outside, Michelle Fisher walked to her father's home nearby with B.F.

56. Amanda Neilson and two deputies with Hays County law enforcement followed Michelle Fisher to her father's home.

57. When Michelle Fisher's father came outside, Amanda Neilson informed him that she was concerned that Michelle Fisher was using drugs because of the drugs found in the Hall residence after Michelle had left, several weeks prior thereto.

58. Ms. Neilson's comments stunned Michelle, as this was the first time that she was aware that there were drugs in the Hall home and further more, this was the first time Michelle was made aware that TDFPS suspected she was using drugs. Ms. Fisher responded to Ms. Neilson's assertions, emphatically telling her she does not use drugs and informing her that she did not know anything about drug use at the Hall home.

59. Amanda Neilson then asked Michelle Fisher to take a drug test to eliminate her doubts, to be administered by Amanda Neilson at that time.

60. Michelle Fisher refused to take the drug test, telling Amanda Neilson that she did not use drugs and it was her right to refuse a drug test.  (It

should be noted herein, although it is emphasized below, within weeks, Michelle Fisher submitted to a hair follicle test, performed in a controlled environment, of which the result was negative for all drugs).

61.     Again, Michelle Fisher asked Amanda Neilson and the Hays County law enforcement officers to leave her property.

62.     Amanda Neilson then informed Michelle Fisher that she had concerns about her home conditions in that her trailer was "extremely small", she "did not observe any type of refrigeration", the home "had a bad odor of what appeared to be cigarette smoke and mold", "there were dishes in the sink" and the "toilet did not appear to be in working condition".

63.     Michelle Fisher corrected Amanda Neilson by informing her that there was a refrigerator with plenty of food and the toilet was working. Again, Michelle Fisher asked Amanda Neilson and the Hays County law enforcement officers to leave her property.

64.     According to Amanda Neilson's affidavit, based on Michelle Fisher's refusal to take a drug test and her opinion that Michelle's home conditions in her trailer were not "ideal", Amanda Neilson "staffed the case" with Supervisor Sharla Lawless, who informed her that she would staff with the Program Director and get back with her.

65.     Meanwhile, Dolores Voudouris returned home and immediately asked what was going on, why were Amanda Neilson and several Hays County law enforcement officers on her property and where were their warrants.

66.    Amanda Neilson responded to Ms. Voudouris that she was there to "investigate alleged abuse of B.F." and that she "did not need a warrant because it was a civil matter".

67.    At which point Ms. Voudouris asked Amanda Neilson and the Hays County law enforcement officers to leave her property and took B.F. into her home and shut the door.

68.    Although Dolores Voudouris and Michelle Fisher had asked Amanda Neilson and the Hays County law enforcement officers several times to leave the property, they remained on the property, observing Michelle Fisher.

69.    Meanwhile, several more officers, John Does 1-5 arrived on the scene, blocking the driveway.  Michelle asked why there were so many officers showing up.  To which one of the law enforcement officers replied that James Daniel Francis had warrants for his arrest. Michelle informed the officer she was unaware that there were warrants for James Daniel Francis arrest.

70.    At this point, Michelle Fisher felt like it was no longer about her son, it had become a full-blown crime scene with numerous law enforcement officers roaming around.

71.    After more time had passed, Michelle heard one of the Hays County law enforcement officers exclaim "we got her on hindering apprehension".

72.    Meanwhile, Amanda Neilson obtained an emergency order to remove B.F. from Michelle Fisher's possession, approved by Dora Montoya, the Program Director, at 1:30 p.m.

73.   Supervisor Kelli Johnson arrived with the Notice of Removal and seized B.F. from Michelle Fisher.

74.   According to the Notice of Removal, the following facts "led (TDFPS) to believe B.F. should be taken into custody": "There are concerns regarding drug use and Ms. Fisher's refusal to drug test".

75.   Amanda Neilson's reason to enter the Voudouris property, enter and search Michelle Fisher's trailer, escorted by law enforcement officers, and to eventually seize Michelle Fisher and seize and remove B.F was utter, unsubstantiated speculation.   Her utter unsubstantiated speculation is substantiated by the numerous responses of "unknown" to the relevant inquiries in the CPS records.

76.   Michelle Fisher adamantly denied she was using drugs. There were no drugs found in or about Michelle Fisher's person or home.   There were no drugs found anywhere on the property on which Michelle Fisher resided.

77.   Amanda Neilson's sworn affidavit describing her investigation of Michelle Fisher and removal of B.F. on February 10, 2014, did not include any mention, indication, speculation or reference in any form or fashion that Michelle Fisher was in any way under the influence of drugs.

78.   Throughout the investigation by Amanda Neilson on February 10, 2014, Amanda Neilson never examined, held, interviewed, interacted with or literally paid any attention to B.F. before his removal.

79.   On February 10, 2014 prior to B.F.'s seizure and removal, B.F. was not in any immediate jeopardy.

80.    Amanda Neilson's sworn affidavit describing her investigation of Michelle Fisher and removal of B.F. on February 10, 2014, did not include any mention, indication, speculation or reference in any form or fashion that B.F. was in immediate jeopardy or that sexual abuse was about to occur.

81.    On February 10, 2014 prior to B.F.'s seizure and removal, B.F. was not in imminent danger of harm and there were no exigent circumstances or a situation requiring immediate action to protect B.F.

82.    Amanda Neilson's sworn affidavit describing her investigation of Michelle Fisher and the removal of B.F. on February 10, 2014, did not include any mention, indication, speculation or reference in any form or fashion that B.F. was in imminent danger of harm and/or that there was exigent circumstances or a situation requiring immediate action to protect B.F.  Rather, Amanda Neilson's affidavit seems to be more focused on the criminal investigation of Michelle and James Daniel Francis.

83.    Amanda Neilson, Kelli Johnson, and Dora Montoya refused to consider any reasonable alternatives to seizing and removing B.F. from Michelle Fisher's care.

84.    B.F.'s grandmother, grandfather and Aunt were all willing, able and requesting to assume immediate care of B.F. at that time.

85.    No one at the scene gave Michelle Fisher, or any other member of her family present, any information – or access to information – regarding the rights or procedures concerning the seizure and removal of B.F.

86. After B.F. was seized and removed, Jon Craigmile arrested Michelle for hindering the apprehension James Daniel Francis.

87. Michelle Fisher was processed and held in the Hays County jail for six days until her family bonded her out.

88. Michelle Fisher's family delayed bonding her out of jail due to false and malicious statements made to them by Amanda Neilson regarding Michelle.

89. Michelle Fisher was not provided with sufficient notice of the emergency hearing.

90. Amanda Neilson did not appear at any of the court proceedings concerning B.F.'s removal. Her false and hearsay statements in her affidavit were introduced into evidence in her absence.

91. Throughout the court proceedings concerning the removal of B.F., Michelle Fisher, was denied the opportunity to cross examine Amanda Neilson and question her regarding her false statements and she was denied access to the evidence against her.

92. During the proceedings **Michelle Fisher submitted to a court ordered hair follicle test, which determined she was negative for all drugs**.

93. Meanwhile, B.F. stayed in state foster care for one week, where he became ill, and then he stayed with his grandfather for six weeks before he was returned to Michelle Fisher.

94. Throughout the whole time that B.F. was in state foster care and in his grandfather's custody, TDFPS restricted Michelle to 2 two-hour supervised visits with her son B.F.

95.    Ultimately, after an adversarial hearing, the Petition filed by the TDFPS Seeking Protection of a Child, For Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship was denied by the Hays County District Court.

96.    Although he knew the allegations were false, the criminal complaint for Michelle Fisher's arrest, charging her with hindering the apprehension of James Daniel Francis, was sworn to by Jon Craigmile.

97.    Michelle Fisher was required to appear in court on several occasions related to the false charges, incurring expenses as a result of the wrongful arrest and prosecution.

98.    On April 15, 2015 the charges were dismissed on the Motion of the Hays county assistant district attorney.

99.    At all times the Defendants did not have probable cause or reasonable suspicion or exigent circumstances to a.) enter Dolores Voudouris' private property; b) enter Michelle Fisher's residence; c) to seize B.F.; or d) detain and arrest Michelle Fisher.

100.    At all times the Defendants acted maliciously, intentionally and with reckless disregard for and deliberate indifference to the Plaintiffs rights and physical and metal well being.

101.    The Defendants actions were based in bad faith in that Plaintiffs believe that the investigation by Amanda Neilson was a pretext for Hays County law enforcement to gain access to Michelle Fisher's residence and arrest her for

drug charges due to their obvious suspicions stemming from the drugs found in the Hall home.

102.    As a direct and proximate result of the Defendants conduct, Dolores Voudouris and her family no longer felt safe on their property and she was forced to sell the land her family had lived on for over fifty years.

## CAUSES OF ACTION

### COUNT ONE
### Constitutional and Civil Rights Pursuant to 42 U.S.C. § 1983
### VIOLATION OF FOURTH AMENDMENT

*"[P]hysical entry of the home is the chief evil against which…*
*the Fourth Amendment is directed." United States v. United*
*States Dist. Court, 407 U.S. 297, 313 (1972)*

103.    The foregoing allegations are incorporated as if re-alleged herein.

104.    Twice in January and/or February 2014, prior to February 10, 2014, unknown law enforcement officers with the Hays County Sheriff's Department, identified herein as John Does 1-5, acting individually and in their official capacities, unlawfully entered and searched Dolores Voudouris' private property without a court order, consent, probable cause or exigent circumstances in violation of Dolores Voudouris' Fourth Amendment protection against unreasonable searches and right to privacy.

105.    On February 10, 2014, investigator Amanda Neilson, detective Mike Andrews, deputy Jon Craigmile, deputy Jarod Rosson and deputy Ben Haverda, acting individually and in their official capacities, entered the private property of Dolores Voudouris without a court order, consent, probable cause or

exigent circumstances in violation of Dolores Voudouris' Fourth Amendment protection against unreasonable searches, seizures and right to privacy.

106.   On February 10, 2014, Amanda Neilson and deputy Jon Craigmile, acting individually and in their official capacities, entered Michelle Fisher's home without a court order, consent, probable cause or exigent circumstances in violation of Michelle Fisher's Fourth Amendment protection against unreasonable searches and seizures.

107.   On February 10, 2014, detective Mike Andrews, deputy Jon Craigmile, deputy Jarod Rosson, deputy Ben Haverda and unknown law enforcement officers with the Hays County Sheriff's Department, identified herein as John Does 1-5, acting individually and in their official capacities, unlawfully deprived Michelle Fisher of her freedom of action and ability to leave their presence in violation of Michelle Fisher's Fourth Amendment protection against unreasonable seizures.

108.   On February 10, 2014, Jon Craigmile, acting individually and in his official capacity, unlawfully arrested Michelle Fisher for Hindering Apprehension without a warrant or probable cause in violation of Michelle Fisher's Fourth Amendment protection against unreasonable seizures.

109.   On February 10, 2014, Amanda Neilson, Kelli Johnson, Sharla Lawless and Dora Montoya, acting individually and in their official capacities, unlawfully seized B.F. without a court order, consent or exigent circumstances in violation of B.F.'s Fourth Amendment protection against unreasonable seizures.

110.   The Defendants acted intentionally and knowing with callous disregard for Dolores Voudouris' constitutional rights.

111.   The Defendants acted intentionally and knowingly with callous disregard for Michelle Fisher's constitutional rights.

112.   As a direct and proximate result of the Defendants' violations of Dolores Voudouris' constitutional rights, Ms. Voudouris suffered severe and substantial damages.   These damages include the forced sale of her home, shock, fright, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

113.   As a direct and proximate result of the Defendants' violations of Michelle Fisher's constitutional rights, Ms. Fisher suffered severe and substantial damages. These damages include the loss of liberty, loss of reputation, humiliation, embarrassment, inconvenience, shock, fright, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

## COUNT TWO
### Constitutional and Civil Rights Pursuant to 42 U.S.C. § 1983
### VIOLATION OF FOURTEENTH AMENDMENT

*It is abiding truth that '[n]othing can destroy a government more quickly than its own failure to observe its own laws or worse, its disregard of the charter of its own existence.'"* Justice Brennan quoting *Mapp v. Ohio*, 367 U.S. 643, 659 (1961) in *Harris v. New York*, 401 U.S. 222, 232 (1971)

114.   The foregoing allegations are incorporated as if re-alleged herein.

115.    Amanda Neilson, Kelli Johnson, Sharla Lawless and Dora Montoya acted intentionally and with callous disregard for Michelle Fisher's clearly established constitutional rights.

116.    Amanda Neilson, Kelli Johnson, Sharla Lawless and Dora Montoya violated numerous statutory requirements and TDFPS policies and procedures throughout the investigation of Michelle Fisher, the seizure and removal of B.F. and the judicial proceedings filed on behalf of TDFPS, in violation of Michelle Fisher's due process rights guaranteed by the 14th Amendment of the United States Constitution.

117.    As a direct and proximate result of TDFPS failure to train, supervise, discipline and adequately hire employees, Amanda Neilson, Kelli Johnson, Sharla Lawless and Dora Montoya violated Michelle Fisher's due process rights guaranteed by the 14th Amendment of the United States Constitution.

118.    As a direct and proximate result of Amanda Neilson, Kelli Johnson, Sharla Lawless, Dora Montoya and TDFPS' violations of Michelle Fisher's constitutional rights, Michelle Fisher suffered severe and substantial damages. These damages include suffered severe and substantial damages.  These damages include the loss of her liberty, parental alienation, the loss of love and care for her son, the loss of reputation, humiliation, embarrassment, inconvenience, shock, fright, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Michelle Fisher, Individually and on behalf of her son B.F. and Dolores Voudouris, respectfully requests judgment against each and all Defendants as follows:

A.    For compensatory damages in an amount to be determined at trial;

B.    For punitive damages in an amount to be determined at trial;

C.    Fro appropriate equitable relief against all Defendants as allowed by the Civil Rights Act of 1871, 42 U.S.C. Section 1983;

D.    For an award of reasonable attorney's fees and costs expended in this case pursuant to the Civil Rights Act of 1871, 42 U.S.C. Section 1983; and

E.    For such other and further relief to which Plaintiff may show himself entitled.

## PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES

Respectfully submitted,

Michelle Fisher
520 Scenic Terrace
Canyon Lake, TX  78133
Tele: 512-468-0848

Dolores Voudouris
520 Scenic Terrace
Canyon Lake, TX  78133
Tele: 512-420-3879

*FisherComplaint*
*Page 22 of 22*